Matter of Davis v Hutchings Children Servs. (2023 NY Slip Op 00906)

Matter of Davis v Hutchings Children Servs.

2023 NY Slip Op 00906

Decided on February 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 16, 2023

535032
[*1]In the Matter of the Claim of Charlene Davis, Appellant,
v
Hutchings Children Services et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:January 13, 2023

Before:Egan Jr., J.P., Lynch, Clark, Ceresia and Fisher, JJ.

Meggesto, Crossett & Valerino, LLP, Syracuse (Grace Nichols of counsel), for appellant.

Egan Jr., J.P.
Appeals from two decisions of the Workers' Compensation Board, filed September 16, 2021, which, among other things, denied claimant's requests for an extreme hardship redetermination pursuant to Workers' Compensation Law § 35 (3).
In 2010, claimant was injured in two work-related accidents while working as a licensed practical nurse for the employer. She thereafter established two claims for workers' compensation benefits resulting from injuries to her face and neck in the first accident and to her back in the second accident. In 2013, claimant was classified with a permanent partial disability and a 76% loss of wage-earning capacity, entitling her to 425 weeks of indemnity benefits. In November 2020, prior to the exhaustion of her indemnity benefits, claimant filed an extreme hardship redetermination request (C-35 form) for each claim pursuant to Workers' Compensation Law § 35 (3). The employer's workers' compensation carrier opposed, contending that the C-35 forms were incomplete and untimely or, in the alternative, that redeterminations were not warranted. Following a hearing on both requests, a Workers' Compensation Law Judge (hereinafter WCLJ) granted claimant's requests under both claims and reclassified her with a permanent total disability. Upon administrative appeal, the Workers' Compensation Board, in two decisions, modified the WCLJ's decisions, finding that claimant had failed to demonstrate extreme financial hardship and was not entitled to reclassification. Claimant appeals from both Board decisions.
Claimant initially contends that the Board misinterpreted the statutory meaning of "extreme hardship" in denying her requests. "Given that the issue is one of statutory interpretation, deference need not be accorded to the Board's interpretation, and we are free to ascertain the proper interpretation from the statutory language and legislative intent" (Matter of Scott v Visiting Nurses Home Care, 172 AD3d 1868, 1870 [3d Dept 2019] [internal quotation marks and citations omitted], lv dismissed 34 NY3d 1011 [2019]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Matter of Mancini v Office of Children & Family Servs., 32 NY3d 521, 525 [2018] [internal quotation marks and citation omitted]; see Matter of Schwabler v DiNapoli, 194 AD3d 1235, 1236 [3d Dept 2021]).
Pursuant to Workers' Compensation Law § 35 (3), "[i]n cases where the loss of wage-earning capacity is greater than [75%], a claimant may request, within the year prior to the scheduled exhaustion of indemnity benefits under [Workers' Compensation Law § 15 (3) (w)], that the [B]oard reclassify the claimant to permanent total disability or total industrial disability due to factors reflecting extreme hardship." Extreme hardship is not defined in the statute but, "[a]ccording to the legislative history, this provision was intended [*2]to provide an exemption for claimants under 'extreme financial hardship' " (Matter of Minichiello v New York City Dept. of Homeless Servs., 188 AD3d 1401, 1403 n [2020], quoting Governor's Program Bill, Bill Jacket, L 2007, ch 6 at 6). The term "extreme" is defined as "existing in a very high degree" and "exceeding the ordinary, usual or expected" (Merriam-Webster.com Dictionary, extreme [http://www.merriam-webster.com/dictionary/extreme]). The Board, relying on the dictionary definition of extreme, concluded that "the Legislature clearly did not intend that the standard for reclassification be 'hardship' alone, but rather, that a claimant must demonstrate financial hardship beyond the ordinary and existing in a very high degree." Although we are not required to defer to the Board's statutory interpretation, given the legislative intent and the plain meaning of the language, the Board's determination that reclassification is warranted to claimants under extreme financial hardship is rational and will not be disturbed (see Matter of Mancini v Office of Children and Family Servs., 151 AD3d 1494, 1496-1497 [3d Dept 2017], affd 32 NY3d 521 [2018]; Matter of Catapano v Jow, Inc., 91 AD3d 1018, 1018-1019 [3d Dept 2012], lv denied 19 NY3d 809 [2012]).
Turning to the merits, the Board's determination as to whether a claimant has demonstrated extreme hardship warranting a reclassification pursuant to Workers' Compensation Law § 35 (3) will not be disturbed if supported by substantial evidence (see Matter of Vicente v Finger Lakes DDSO, 209 AD3d 1073, 1075 [3d Dept 2022]; Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d 1184, 1186-1187 [3d Dept 2021]). In determining whether a claimant has demonstrated extreme hardship so as to qualify for reclassification, the Board considers the claimant's assets, monthly expenses, household income and any other relevant factors (see Matter of Vicente v Finger Lakes DDSO, 209 AD3d at 1074; Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1186; Workers' Compensation Bd Release Subject No. 046-938 [Apr. 26, 2017]). Claimant's C-35 forms reflect that, prior to the scheduled exhaustion of her indemnity benefits, her monthly income was $2,716 ($1,416 in indemnity benefits and $1,300 in Social Security disability benefits) and her monthly expenses totaled $1,820.[FN1] According to her testimony, claimant's sole household income after her indemnity benefits expired in December 2020 is the $1,300 monthly Social Security disability benefit payment.[FN2] Claimant, who was 66 years old at the time that her indemnity benefits expired, testified that her 24-year-old son lives with her, although he does not work, collect unemployment benefits or provide any income to the household.[FN3] The record reflects that claimant owns and pays insurance on two vehicles but bank records also indicate that she frequently incurs rental car expenses. Claimant's testimony and bank records reflect that she receives a monthly stipend of approximately[*3]$300 for providing services for a senior citizen support organization that was not taken into account on her C-35 forms. Claimant's records also reflect several medical bills that were due or past due at the time of the hearing.[FN4]
In our view, the Board properly considered claimant's assets, monthly household income — including the $300 monthly stipend — and monthly expenses in denying the requests for reclassification (see Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1186-1187; compare Matter of Vicente v Finger Lakes DDSO, 209 AD3d at 1075). The Board concluded that claimant did not establish any unusual or unexpected monthly expenses for a person living on a fixed income. Moreover, the Board found that a comparison between claimant's bank account statements while she was still receiving her indemnity payments with her bank account statement from after her indemnity payments ended indicated that she was still able to pay her expenses after her benefit payments stopped. As such, the Board concluded that claimant's reported monthly expenses were not substantially higher than her monthly income so as to demonstrate extreme hardship. Based upon the foregoing and our review of the record, we find that the Board's determination that claimant has not demonstrated financial hardship beyond the ordinary and existing in a very high degree so as to meet the threshold of extreme hardship is supported by substantial evidence and will not be disturbed (see Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1186-1187). Claimant's remaining contentions, to the extent not explicitly addressed, have been reviewed and found to be without merit.
Lynch, Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the decisions are affirmed, without costs.

Footnotes

Footnote 1: Her monthly expenses include $650 for rent, $200 for utilities, $60 for telephone, cable and internet, $200 for medical expenses, $350 for food and $360 for car insurance and gasoline.
Footnote 2: Claimant's Social Security benefit payment was $1,323 in February 2021.
Footnote 3: The Board credited claimant's testimony that her adult son does not provide any support for her but noted that the impact on her monthly expenses, if any, from having her adult son live with her was unclear.

Footnote 4: Claimant testified that she has lung cancer, has had a lung removed and also has had heart surgery in the past.